[Genesee Township *v.* McDonald.]

# Genesee Township Independent School District *versus* McDonald.

1. Contracts entered into with a number of persons acting as a board of school directors are not binding upon the school district, when there is in existence at the same time, another acting board of school directors, who are so *de jure* and who have notified the persons contracting with the first named board, not to carry out their contracts.

2. A school board having no standing regulations for periodical meetings met, organized and adjourned. It afterwards met for the transaction of business, and adjourned to a time and place certain. A quorum not appearing at that adjourned meeting, the only member present adjourned it to another time and place certain, and this happened on several succeeding occasions. *Held*, that since it did not appear from the minutes of the board that there was any adjournment of the meeting for organization to that held for the transaction of business, the subsequent adjourned meetings were not regular meetings within the meaning of the Act of April 11th 1862, § 3 (P. L. 471), and that therefore the absence of members from two of said meetings successively, did not warrant the board, under the provisions of the Act of May 8th 1854, § 8 (P. L. 618), in declaring the seats of said members vacant, and proceeding to supply the vacancies.

3. Where the minutes of a school board show that at a meeting, at which a quorum has been present, a resolution has been passed unanimously employing a teacher, this is such a substantial compliance with the provisions of the Act of April 11th 1862, § 4 (P. L. 472), as will bind the school district.

4. Tobin *v.* Morgan, 20 P. F. Smith 229, followed.

5. Where such resolution was passed at a special meeting called for the transaction of other business,—*Held*, that this was not such an irregularity as could of itself affect the power of the school directors, and that, therefore, the resolution was valid and binding on the school district.

June 20th 1881.  Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas of *Potter county :* Of May Term 1881, No. 126.

This was, in the court below, an appeal from the judgment of an alderman in favor of Mary A. McDonald against the Genesee Township Independent School District, for $66, for wages as a school teacher under a contract with Henry Roache and others, acting as the board of school directors of said school district.

On the trial, before Wilson, A. L. J., the school district defended on the ground that the said Roache and others were not the lawful board of school directors of said district and had no power to bind the same by said contract.

The following facts appeared :—In September 1879, the

regularly qualified and acting board of school directors of said school district consisted of the following persons: James H. Leach, President; Henry Roache, Secretary; Thomas Maxwell, Thomas T. O'Donnell, Thomas M. O'Donnell and John M. Moran. On September 2nd 1879, a meeting was held, at which John M. Moran, Thomas T. O'Donnell, Thomas M. O'Donnell and Henry Roache, being a quorum, were present. All the said members of the board had held a meeting on June 2d 1879, for the purpose of organization. The minutes of this meeting, as printed in the evidence, did not show that the board then adjourned to meet at any time certain, nor did it appear whether any meeting was held between June 2d and September 2d, 1879, nor that any standing regulations existed for periodical stated meetings. The meeting of September 2d adjourned to meet on Tuesday evening, September 15th at School House No. 1, at which time and place no one appeared except Roache, who adjourned the board "until Thursday evening at six o'clock P. M. at No. 1 School House." On the following Thursday evening, September 18th, Roache appeared alone and again adjourned till Tuesday evening September 23rd at six o'clock at the same place. It did not appear that the other directors had any notice of these adjournments, although they were regularly entered on the minutes. On the last named evening, Roache was the only one that appeared, when he proceeded to fill vacancies by declaring Thomas Maxwell's seat vacant, he having been absent from more than two preceding meetings, and appointed Laurence Moran in his place. Roache and Moran then appointed Thomas Burns to fill the vacancy caused by the resignation of James Leach (who had resigned and moved from the district); they then adjourned to Wednesday evening, the 24th, at 7 P. M., all of which proceedings were entered on the minute book. The old board having no notice of this meeting, Burns, L. Moran and Roache met and declared the seats of Thomas M. O'Donnell, Thomas T. O'Donnell and John M. Moran, vacant, for absence from four regular meetings, and appointed Michael McNulty, Patrick O'Donnell and Francis Luddon in their places. On September 26th, the new board—so called—met and transacted some business, and again, on October 4th following, Lawrence Moran, Thomas Burns, Henry Roache and John M. Moran met, pursuant to adjournment, and with them Thomas T. O'Donnell and Thomas M. O'Donnell, of the old board, when the resolution of September 24th was rescinded by vote, and Thomas T. O'Donnell and Thomas M. O'Donnell by vote reinstated, which proceeding was afterward "cancelled by order of the board."

From that time until June 1st 1880, both boards of school

[Genesee Township *v.* McDonald.]

directors claimed each to be the acting board, and each held their meetings and kept their separate records.

On May 4th 1880, a special meeting was called by the board composed of Thomas Burns, President, Henry Roache, Secretary, and others, for the purpose of settling with the treasurer they had appointed; after effecting such settlement, a resolution was unanimously passed employing Mary A. McDonald, the plaintiff, to teach a three months' school, at $16 per month. She accepted the engagement, and taught until the duly elected board, which organized the first Monday of June 1880, locked the school house against her, and put in another teacher.

Miss McDonald notified the board that she was ready to complete her contract, and after the expiration of the three months, brought this suit.

The defendants offered to prove by witnesses and records that the old board of school directors, composed of Thomas T. O'Donnell, Thomas M. Maxwell and others, were the duly elected and acting school directors during the entire period in which the so-called board, appointed as above mentioned, assumed to act; and that the old board notified Miss McDonald before she commenced to teach, that the persons who employed her had no authority so to do. Objected to on the ground that the title to school directors cannot be tried collaterally in this action, and because the offers do not tend to rebut the evidence that the board which employed the plaintiff was a de facto board. Objection sustained and offers rejected. Exception.

The court instructed the jury to find for the plaintiff. Verdict accordingly for the plaintiff for $49.68. The defendants took this writ of error, assigning for error, inter alia, the exclusion of their offers of testimony as above.

*Benson & Peck* and *M. F. Elliot,* for the plaintiffs in error. —The Act of May 8th 1854, section 8, Purd. Dig. 240, pl. 23, provides that if any school director shall neglect to attend any two regular meetings of the board in succession, unless prevented by sickness, &c., the *directors present* may declare his seat vacant and appoint a successor. *One* director has no power to declare a vacancy. In this case, the adjourned meetings were fixed arbitrarily by Roache, and were not " regular " meetings. The directors had no notice of them. The persons appointed at those meetings did not constitute such a de facto board as could bind the school district by their acts.

The court erred in refusing to permit the defendant to show that the old board was both a de jure and a de facto board during all the time that the so-called de facto board were attempting to usurp its powers. There cannot be two or more de facto

[Genesee Township *v.* McDonald.]

boards at the same time, each having power to bind the district. The notice from the old board to the plaintiff of the want of authority in the persons employing her should also have been admitted in evidence.

*Olmsted* (with whom was *Larrabee*), for the defendant in error.—The new board was lawfully appointed under the Act of May 8th 1854, sections 8 and 17, the latter of which provides: "If less than a majority of directors or controllers attend any meeting no business shall be transacted thereat except that of adjournment, and of *appointments to fill vacancies in the board as hereinbefore directed.*"

The secretary might have proceeded to fill the vacancy after two meetings, under section 8 of said act, but he gave the delinquents four meetings before declaring any seat vacant. The subsequent proceedings in filling vacancies were in exact conformity with the instructions of the state superintendent as laid down in School Laws and Decisions, edition of 1879, page 20, pl. 22, as follows:

"If only one member remains in office he can legally take measures to fill the board. In that case he should appoint one new member, he and that new member should then appoint a third, and so on until the board is full."

The meetings of the board, commencing with the regular meeting of September 2d 1879, were all "regular meetings" as defined by the Act of April 11th 1862, section 3, Purd. Dig. 241, pl. 35, viz.: "If there are no standing regulations then every meeting held in succession from said first meeting for organization *by adjournment* to a time and place certain, and *so entered on the minutes* of the proper board, shall be to all intents and purposes regarded as a *regular meeting.*"

No hearing or trial was necessary to declare a seat vacant for non-attendance at meetings: Felton *v.* Commonwealth, 8 W. & S. 267.

But in any event the board, so appointed, was a de facto board authorized to bind the district by this contract. This board had charge of all the books, moneys, collection of taxes and other business of the district, including the employment and payment of teachers, from the fall of 1879 to the spring of 1880, and the township auditors met with it and settled the account of its treasurer. Under the authorities, these circumstances are sufficient to constitute a valid de facto board, even if the members had not acted under color of election or right of appointment thereto: State *v.* Carroll, 38 Conn. 449, and authorities there reviewed; McGargell *v.* Hazleton Coal Co., 4 W. and S. 424; Baird *v.* The Bank, 11 S. and R. 414; Shartzer

*v.* School District, 9 Norris 192. The acts of school directors within the scope of their office are not to be set aside for mere technical defects or omissions: School Directors *v.* McBride, 10 Harris 215. In this case, the employment of a teacher was a necessary and proper act, the services were rendered and accepted by the school district without objection, and the compensation agreed upon was reasonable. That a teacher is entitled to recover such compensation, whether persons employing her acted with or without authority, is distinctly recognized under very similar circumstances, in School District of Dennison Tp. *v.* Padden, 8 Norris, 395, where Mr. Justice GORDON, though holding the contract invalid, said: "For the two months which Miss Padden taught she was entitled to pay, not because of the contract with the president, but because the school district had without objection received her services."

The offers of evidence to show that the old board was the de jure and de facto board were properly excluded, because the directors were not parties to this action, and their title to the office could not be tried collaterally in this suit between a teacher and the school district.

Mr. Justice GORDON delivered the opinion of the court October 3d 1881.

The plaintiff in error, defendant below, complains, and we think justly, of the refusal of the court below to receive and submit to the jury the following offers of evidence: "1. To prove by Thomas O'Donnell, the witness on the stand, and others, and by the records of the township elections, that Thomas T. O'Donnell, Thomas M. Maxwell, Henry Roache, John M. Moran, Thomas M. O'Donnell and John Hart, were elected school directors of said school district, and by the minutes of said school board that Bryan McGinnis was duly appointed a school director of said district. To be followed by the evidence of Thomas O'Donnell and others, showing that said board, except as to Henry Roache, were the acting school directors of said district, from the date of their qualification to the 1st of June 1880.

"2. To prove by Thomas O'Donnell and other witnesses, and by the minutes of said board, that the old school board, composed of John Moran, Thomas M. O'Donnell, Thomas T. O'Donnell, Thomas Maxwell, Bryan McGinnis and John Hart, appointed in the place of J. H. Leach, removed, employed the teacher for said school district, furnished the wood, repaired the school house, and performed the other duties of school directors during the time that the board composed of Henry Roache, Thomas Burns, Patrick Roache and others, claimed to be the acting school board.

" 3. To prove that the old board of school directors, composed of Thomas T. O'Donnell, Bryan McGinnis, Thomas M. O'Donnell, Thomas Maxwell, John Hart and John Moran, by order of said board of school directors, served a written notice upon the plaintiff, prior to her commencing the services, on which action is brought in this case, that they were the legal board of directors, and that they forbid her proceeding to teach the school in said district, or take possession of the school house under the employment of any other persons, assuming to be the board of school directors of said district."

For the purpose of this case we must take these offers as proved; this being so, we have established as facts: 1. That the persons named were the lawfully elected and constituted board of directors; 2. That they acted as such; and, 3. That the plaintiff was not only not employed by this board, but that she was notified not to attempt to teach under the authority of those other persons who assumed to be the board of directors.

In the face of such facts as these, it is too clear for argument, that the plaintiff had no case.

It is contended for the plaintiff that the Roache board was, at least, a de facto board, and, as to third persons, its acts would be good and not impeachable in a collateral case such as this. This position would be sound, and the authorities cited to support it would be in point, were it not that the hypothesis is, that there was at the same time, an acting de jure board; but as there can be but one such board in a school district, there can be no legal presumption which will support the acts of another. If the assumption of the plaintiff be correct, then might there be any number of school boards, acting for a district whose contracts would, as to third persons, be good and binding, and their powers to involve the district in debt and confusion could only be determined by a judgment on a writ of quo warranto; but it certainly requires no serious argument to prove the unsoundness of a doctrine such as this.

The position in fact is, that any half dozen men may, without warrant of law, assume the rights and duties of the legally constituted and acting board of directors, and make contracts by which the district must be bound. This assumption, however, is so unreasonable that it cannot be law. But here are two de facto boards; the one has made a contract with the plaintiff, the other has notified her that it has repudiated that contract; that it is null and void for want of authority in those making it. How is a question of this kind to be determined without determining the legal right of the two boards? And suppose, for instance, that each board had employed a different teacher to occupy the same school house. How then? Could both contracts

2 OUTERBRIDGE—29

be enforced against the school district? Certainly not. It would then be, as it now is, a question as to which of these boards had the power to contract for the services of a teacher.

The next question is, had Henry Roache, under the circumstances, the power to declare and fill vacancies? We think he had no such power, and this principally for the reason that no vacancy had occurred at the time he undertook thus to act.

The board had been regularly adjourned from the 2d to the 15th of September, to meet at School House No. 1. At that time and place, none of the directors were present, except Henry Roache, who took it upon himself to adjourn the meeting until the succeeding Thursday evening, at which time, no other members of the board being present, and probably, for the very good reason that they had no notice of the time and place appointed for it, he again adjourned until the 23d inst. At this time, again finding himself the only one of the directors present, he declared the seat of Thomas Maxwell vacant and appointed Lawrence L. Moran to fill his place. Now the Act of May 8th 1854 thus provides : "If any person, having taken on himself the duties of his office as director, shall neglect to attend any two regular meetings of the board in succession, unless detained by sickness or prevented by absence from the district, or to act in his official capacity when in attendance, the directors present shall have power to declare his seat in the board vacant, and to appoint another in his stead to serve until the next regular election."

Now, admitting the power of a single director to adjourn meetings and to declare and supply vacancies upon proper occasions, yet, it is manifest, that neither he nor a majority of the board, has any such power except under the conditions prescribed by the act. It is only where a director has neglected to attend two successive regular, or as defined in Zulich v. Bowman, 6 Wr. 83, stated, meetings of the directors, that his seat can be declared vacant. It is true, that the Act of 1862 provides that if there are no standing regulations for periodical meetings, in that case "every meeting held in succession, from the first meeting held for organization, by adjournment to a time and place certain, and so entered on the minutes," shall be regarded as a regular meeting. But, unfortunately for the plaintiff's case, it does not appear by the minutes that there was any adjournment of the meeting for organization, on the 2d of June, to the 2d of September. It follows, that as this meeting was not a regular meeting, within the meaning of the Act of 1862, neither, under the ruling in the case above cited, were the adjourned meetings of September 15th, 18th and 23d, regular meetings. As we are thus thrown back upon the Act of 1854,

[Waynesboro Mutual Fire Ins. Co. *v.* Creaton.]

it is clear that the appointments of Roache and his appointees were without authority and void.

On the hypothesis that the defendant's offers are, or can be, proved, the plaintiff's case cannot be sustained, and, in that event, the resolution of the 4th of May 1880, by which the plaintiff was employed, whether regular or irregular, is of no moment, but if these offers cannot be sustained, this resolution may be of importance, and must, therefore, be considered. After a good deal of hesitation we have come to the conclusion that, all other things being regular, the resolution would be good and binding upon the district. The minutes show that at that meeting, four directors, Burns, McNulty and the two Roaches were present, and it further appears, by the same minutes, that the resolution passed unanimously; in other words, by the affirmative vote of every member present. This, according to the ruling in Tobin *v.* Morgan, 20 P. F. Smith 229, was a substantial compliance with the fourth section of the Act of April 11th 1862.

It is true that the meeting was called for a special purpose, and that, regularly, no other business than that for which it was appointed ought to have been transacted, but as this irregularity could not, of itself, affect the power of the directors, the resolution would, nevertheless, be good.

The judgment is reversed, and a new venire ordered.